[Cite as *Clayburn v. Clayburn*, 2017-Ohio-7193.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| AMANDA J. CLAYBURN | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27476 |
| | : | |
| v. | : | Trial Court Case No. 14DR383 |
| | : | |
| ERIC G. CLAYBURN | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 11th day of August, 2017.

. . . . . . . . . .

RICHARD ARUTHUR, Atty. Reg. No. 0033580, 1634 South Smithville Road, Dayton, Ohio 45410
     Attorney for Plaintiff-Appellee

ERIC G. CLAYBURN, 116 Innisbrook Circle, Daytona Beach, Florida 32114
     Defendant-Appellant, Pro Se

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Eric Clayburn appeals pro se from the trial court's final judgment and divorce decree that, among other things, terminated the parties' marriage, divided their assets and liabilities, and declined to award spousal support but retained jurisdiction over it.

{¶ 2} Eric advances four assignments of error.[1] First, he contends the trial court erred by not taking into consideration Amanda's bank accounts when dividing the parties' assets. Second, he claims the trial court erred by awarding Amanda one half of his pension, minus the monthly cost of a survivor benefit, effective the date of the final divorce hearing. Third, he argues that the trial court erred by finding the value differential in its property division to be inconsequential and by not considering marital debts that he paid in its division of assets. Fourth, he asserts that the trial court erred by retaining jurisdiction over spousal support for ten years.

{¶ 3} The record reflects that Eric and Amanda married in 1984 and have three adult children. Throughout their marriage, Eric served as a career officer in the United States Air Force, reaching the rank of colonel. He served at bases worldwide, and Amanda accompanied him. In April 2014, Amanda filed for divorce. Approximately two months later, Eric was forced to retire from the military with more than 30 years of service. The divorce action proceeded to a March 2015 hearing before a magistrate. The primary issue at the hearing involved dividing the parties' assets, which included, inter alia, Eric's pension, a number of financial accounts, five time-shares, several vehicles, and life-insurance policies. The parties appear to have carried little debt prior to the divorce action, and most of what they did have was paid off before the final hearing. Eric and Amanda

---

[1] For purposes of clarity, we will refer to the parties by their first names.

also had no marital residence. At the time of the hearing, Eric was residing in Florida and Amanda was in Ohio.

{¶ 4} After taking testimony from the parties and reviewing numerous exhibits, the magistrate awarded Amanda one half of Eric's pension, minus the monthly cost of a survivor benefit, which the magistrate ordered taken out of her share. The magistrate made the pension division effective March 16, 2015, the date of the hearing. The magistrate divided the time shares between the parties and awarded them their respective vehicles, IRA accounts, and life-insurance policies. The magistrate ordered various small financial accounts to be closed and the proceeds to be divided equally.

{¶ 5} The parties' largest account was an investment account that once had a balance of $177,493.84. The magistrate noted that Amanda had withdrawn $84,345 from the account, and Eric had withdrawn $75,000 from the account. Noting that Amanda had received $9,345 more than Eric, the magistrate awarded him the remaining balance of $8,866.10.

{¶ 6} The magistrate also noted that Eric had received a military "cash out" of $23,066.06 upon his retirement. The magistrate found that he had used this money to pay marital debts and to support himself until he began receiving his pension. Because the money no longer existed at the time of the divorce hearing and had not been used solely for Eric's personal benefit, the magistrate found that it was not divisible. Finally, the magistrate addressed the division of household goods, an Amazon Prime account, and Eric's G.I. Bill benefits.

{¶ 7} The magistrate then noted that its division of marital property resulted in Amanda receiving property worth a total of $2,706.20 more than the property Eric

received. The magistrate reasoned: "In light of the absence of a temporary order and delay in plaintiff receiving her share of defendant's pension, it is found to be equitable that there be no equalization related to these differentials." (Doc. # 51 at 10).

{¶ 8} With regard to spousal support, the magistrate reasoned:

Neither party is employed. Plaintiff has not been employed for many years. Plaintiff is pursuing education to become a "life" coach. Defendant is retired and is pursuing education for employment outside the military. Defendant is adjusting to life outside the military and states he suffers from PTSD. Defendant has financial assistance from his G.I. Bill.

The parties will be splitting defendant's military pension. Defendant earned close to $200,000 before his military retirement of $83,000.00 annual income.

The parties have considerable assets, some of which are not easily accessible for payment of living expenses.

The parties have been married for over 30 years and have raised a family. The parties have travelled across this country and out of the country. Plaintiff is 56 years old and defendant is 55 years old. Both appear to be in good health.

It is found that no award of spousal support is appropriate at this time in light of the parties' comparable incomes. Due to defendant having more earning capacity [than] plaintiff and based upon his past employment and experience, jurisdiction to award spousal support will be retained for ten years in the event defendant or plaintiff become employed.

(*Id.* at 10-11).

{¶ 9} Eric filed timely objections to the magistrate's decision. In his amended supplement to objections, which he filed after obtaining a transcript, Eric argued that the magistrate had overlooked $11,000 and $3,000 that Amanda had withdrawn from a marital bank account. He also argued that the magistrate had failed to acknowledge time-share membership fees of $3,683.41 that he had paid out of the $75,000 he had withdrawn from the investment account mentioned above. He further asserted that the magistrate had failed to consider his use of $30,009.46 of the $75,000 to pay off other marital debt, apparently including condo dues, condo mortgage payments, and life insurance premiums among other things. Eric additionally argued that he had given Amanda $3,000 out of his $23,066.06 military "cash out" and had used the rest for his expenses. With regard to spousal support, Eric challenged the magistrate's decision to retain jurisdiction over it. (Doc. # 70).

{¶ 10} The trial court overruled Eric's objections and adopted the magistrate's ruling in a September 28, 2016 decision and judgment. (Doc. #76). Absent any stipulation by the parties, the trial court determined that it would use the March 16, 2015 final hearing date as the marriage termination date for purposes of valuing the parties' assets and determining the balances in their accounts. (*Id.* at 5). Before addressing the objections set forth above, the trial court also listed the parties' accounts. In so doing, it observed that "[n]o evidence was presented with regard to Amanda's individual Wright-Patt and Chase accounts." (*Id.* at 6).

{¶ 11} With regard to Eric's specific objections, the trial court then noted Amanda's testimony that she had taken $11,000 from a marital account when the parties separated

to get started on her own. Thereafter, Amanda periodically had made withdrawals from marital accounts, at Eric's direction, to cover her living expenses. In light of these facts, the trial court reasoned:

> As no temporary spousal support was ordered in this matter, and Amanda testified that this $11,000 was to "get [her] started," which was not denied by Eric, the Court finds that this amount was not wrongfully withdrawn by Amanda, and therefore the Court will not use the balance of that account on the date that Amanda withdrew the amount. Further, the Court finds that Eric's argument, that $3,000 was placed by Amanda into her individual account from the parties' joint account, does not appear unusual, given that Eric was putting money into a joint account and directing Amanda's withdrawals. Both parties utilized monies for standard living expenses since their separation.

(*Id.* at 7).

{¶ 12} With regard to Eric's argument about his use of the $23,066.06 military "cash out," the trial court agreed with him that he used the money to pay expenses and gave some to Amanda. The trial court noted, however, that the magistrate had not included any of this money when it divided and equalized the parties' assets. Therefore, the trial court found nothing objectionable.

{¶ 13} As for Eric's argument that he paid marital debts with some of the $75,000 he withdrew from the parties' investment account, the trial court found insufficient evidence to establish that he should be reimbursed for any of the payments. The trial court was unable to determine whether Eric's share of the investment account actually

was used to pay the debts. As a result, it concluded that he simply had used marital property to pay marital debts. (*Id.* at 8-10).The trial court agreed with the magistrate, however, that Eric was entitled to the remaining $8,866.10 in the investment account. The trial court also agreed with the magistrate that the $2,706.20 value differential in the property each party received was "insignificant under the circumstances, and not subject to equalization, due to the absence of a temporary spousal support order and the delay in Amanda receiving her share of Eric's pension." (*Id.* at 12). Finally, the trial court overruled Eric's objection to retaining jurisdiction over the issue of spousal support. It reasoned:

> The Court finds that the parties were married for over 30 years. While the parties will, as an immediate matter, have equivalent income due to the division of Eric's military pension, and therefore no spousal support is ordered at this time, no evidence was presented with regard to earning potential once the parties have graduated with their anticipated degrees. The Court finds it appropriate to retain jurisdiction over spousal support for a period of ten years.

(*Id.* at 12).

{¶ 14} After overruling Eric's objections, the trial court filed a separate final judgment and divorce decree that terminated the parties' marriage and resolved all issues consistent with its prior decision. (Doc. # 81). This appeal followed.

{¶ 15} In his first assignment of error, Eric contends the trial court erred in not considering certain bank accounts in Amanda's name when it divided the parties' assets. In particular, he takes issue with the trial court's statement that "[n]o evidence was

presented with regard to Amanda's individual Wright-Patt and Chase accounts." (Doc. # 76 at 6). Eric complains that Amanda and her counsel never provided him with statements for these accounts, either prior to or during the hearing before the magistrate, despite having been obligated to do so. Eric also notes that the record contains some evidence about the accounts in the form of Amanda's testimony admitting that she placed money in the accounts. Eric argues that the magistrate and the trial court could not make an equitable asset division without documents establishing the balance in these accounts at the time of the hearing.

{¶ 16} Upon review, we find Eric's first assignment of error to be without merit. It appears to be true that the record contains no documentary evidence with regard to the above-referenced Wright-Patt and Chase accounts. However, Eric could have raised that issue through a motion to compel discovery or sought a continuance if he believed cross examining Amanda about the accounts was insufficient. In any event, a review of Eric's objections to the magistrate's decision reveals that none of his objections had anything to do with Amanda's Wright-Patt and Chase accounts or the adequacy of the evidence regarding their balances. By failing to raise the issue in an objection to the magistrate's ruling, Eric has waived all but plain error with respect to his argument about the accounts. *Cox v. Cox*, 2d Dist. Montgomery Nos. 18345, 18350, 2000 WL 1838266, *4 (Dec. 15, 2000). We see no plain error here. At the hearing before the magistrate, Amanda admitted withdrawing $84,345 from the investment account. She explained that she paid bills and living expenses with the money during the pendency of the divorce proceeding and also placed $50,000 of it in a Chase mutual account. (Hearing Tr. at 34-35). As for the Wright-Patt account, Amanda testified that she placed $11,000 into it shortly after the parties

separated to get started living on her own. (*Id.* at 38). Although the record may have lacked documentary evidence about the two accounts, Amanda's testimony certainly addressed them sufficiently to avoid a finding of plain error. Accordingly, the first assignment of error is overruled.

**{¶ 17}** In his second assignment of error, Eric claims the trial court erred by awarding Amanda one half of his pension, minus the monthly cost of a survivor benefit, effective March 16, 2015, the date of the final hearing. In support, Eric notes that he paid marital debts during the pendency of the divorce proceeding and also placed marital funds in an account for Amanda to use during that time.

We find the second assignment of error to be unpersuasive. Eric admitted during the hearing before the magistrate that Amanda was entitled to one half of his pension, provided that she pay the monthly cost of the survivor benefit out of her share. (Tr. at 71). That is precisely what the magistrate and the trial court ordered. As for the March 16, 2015 effective date of Eric's obligation to split his pension with Amanda, the magistrate's decision adopted that date. (Doc. #51 at 6). Once again, Eric's objections to the magistrate's decision did not challenge the use of March 16, 2015 as the effective date for his obligation to split his pension with Amanda. Consequently, he has waived the issue for appeal, and we find no plain error. The fact that Eric used marital funds to pay marital debts and gave Amanda some marital funds to cover her living expenses after the parties' separation and prior to the final hearing fails to demonstrate plain error in adopting the hearing date as the marriage termination date and, therefore, the date of Eric's obligation to split his pension.[2] The second assignment of error is overruled.

---

[2] We note that in February 2016, nearly one year *after* the March 16, 2015 hearing, the

{¶ 18} In his third assignment of error, Eric contends the trial court erred by (1) finding the value differential in its property division to be inconsequential and (2) not taking into account marital debts that he paid.

{¶ 19} With regard to the $2,706.20 value differential in the property the parties received, we note that Eric failed to raise this issue in his objections to the magistrate's decision. Although the trial court briefly addressed the issue in its decision and judgment, it was not mentioned anywhere in Eric's objections. In any event, we see no error—much less plain error—in the trial court's characterization of a $2,706.20 differential in the parties' property division as "inconsequential." In light of the parties' 30-year marriage, their substantial assets, and the fact that some of the values used by the trial court (i.e., vehicle values) were themselves mere estimates, this difference is de minimus.

{¶ 20} Eric's other argument regarding his payment of marital debts reads, in its entirety, as follows: "On page 10 of the Magistrate's Decision and Judgment filed with the court on September 28, 2016 the Magistrate ruled 'Eric was making payments toward marital debts from marital assets, which ultimately decreases the amount available to divide between the parties.' The court and plaintiff's attorney in final equalization never took into account the Judge's previously stated decision." (Appellant's brief at 7). Upon review, we see no error. If Eric paid marital debts with marital assets prior to finalization of the divorce, that fact would have no impact on equalization of the parties' remaining

---

magistrate filed a decision ordering Eric to begin paying Amanda $2,807.83 per month as her share of his pension. (Doc. #66). The magistrate made this order because no final decree had been filed and, as a result, Amanda still was not receiving her marital share. The magistrate's order included an assurance that "Defendant will receive credit for each month of retirement that he pays to plaintiff consistent with this order." (*Id.* at 3). Absent any evidence or argument from Eric to the contrary, we can only presume that he received the promised credit.

assets for purposes of dividing them. The third assignment of error is overruled.

{¶ 21} In his fourth assignment of error, Eric challenges the trial court's decision to retain jurisdiction over spousal support for ten years. He argues that his military pension is sufficient to provide for both parties and that any future potential employment either party might obtain would not justify spousal support.

{¶ 22} We review the trial court's retention of jurisdiction over spousal support for an abuse of discretion. *Pentella v. Pentella*, 2d Dist. Montgomery No. 25705, 2014-Ohio-1113, ¶ 48. We see no abuse of discretion here. " 'A trial court may retain jurisdiction over the issue of spousal support even when no support is ordered.' " *Id.*, quoting *Buch v. Buch*, 2d Dist. Montgomery Nos. 20878, 20881, 2005-Ohio-4491, ¶ 5. Moreover, the fact that the parties are splitting a significant military pension does not preclude the potential need for a future spousal support award if one of the parties is employed and earns significantly more than the other. *Buch* at ¶ 19-27 (finding spousal support award appropriate, despite the fact that it was not initially ordered, where wife was working and where husband's mental state worsened shortly after parties' divorce and husband's military retirement as a colonel even though parties were splitting his sizeable pension equally).

{¶ 23} Here the parties' had a roughly 30-year marriage during which Eric's earnings significantly exceeded those of Amanda, who was employed only sporadically. Although presently unemployed, both parties are relatively young and have enrolled in school to pursue new career paths, and their relative future earnings are entirely unknown. Under these circumstances, we cannot say the trial court abused its discretion in retaining jurisdiction over spousal support for ten years. *Cf. Pentella* at ¶ 48 (finding no

abuse of discretion where the trial court declined to award spousal support but retained jurisdiction over the issue for a period equal to one-third of the length of the parties' marriage). The fourth assignment of error is overruled.

{¶ 24} The judgment of the Montgomery County Common Pleas Court, Domestic Relations Division, is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Richard Arthur
Eric G. Clayburn
Hon. Denise L. Cross