[Cite as *Clack v. Clack*, 2024-Ohio-1807.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| CATHERINE A. (CLACK) EAST | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-27 |
| | : | |
| v. | : | Trial Court Case No. 17-DIV-00358 |
| | : | |
| RICHARD A. CLACK JR. | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 10, 2024

. . . . . . . . . . .

JAY M. LOPEZ, Attorney for Appellant

SCOTT D. RUDNICK, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Richard A. Clack, Jr. appeals from a judgment of the Darke County Court of Common Pleas, Domestic Relations Division, that found him in contempt of court and denied his motion to terminate or reduce his spousal support obligation. For the following reasons, we will affirm the trial court's judgment to the extent

it found Richard in contempt, reverse its judgment with respect to the spousal support obligation, and remand the cause for further proceedings consistent with this opinion.

I.      Facts and Course of Proceedings

{¶ 2} On December 24, 1977, Richard and Plaintiff-Appellee Catherine A. (Clack) East were married.   On August 2, 2017, Catherine filed a complaint for divorce.[1] Richard filed an answer and counterclaim.   On June 20, 2018, the trial court issued a final decree of divorce.   Pursuant to the divorce decree, Richard was ordered to pay $2,500 per month in spousal support for 162 months.   The trial court retained jurisdiction regarding the issue of spousal support "both as to amount and duration."

{¶ 3} On October 22, 2018, Richard filed a motion to reduce his spousal support obligation due to involuntary unemployment.   On February 5, 2019, an agreed order was filed reducing his spousal support obligation to $1,750 per month.

{¶ 4} On February 7, 2022, Richard filed a motion to terminate or reduce his spousal support obligation.   Richard explained that he was in failing health and had been on short-term disability since November 2021 due to his health issues.   An August 5, 2022 agreed order reduced Richard's spousal support obligation to $750 per month, effective February 7, 2022, until he returned to work or until July 25, 2022, whichever event occurred first, at which time spousal support would return to $1,750 per month.

{¶ 5} On November 7, 2022, Richard again filed a motion to terminate or reduce his spousal support obligation, asking that the reduction or termination be made

---

[1] For purposes of clarity and convenience, we will refer to the parties by their first names.

retroactive to July 25, 2022. Richard explained that his short-term disability payments terminated on July 14, 2022, due to an error in submission by his physician's office. He also noted that he had applied for Social Security disability benefits in August 2022 and was waiting for a decision. Catherine subsequently filed a motion to find Richard in contempt for failure to abide by the terms of the August 5, 2022 agreed order.

{¶ 6} On September 6, 2023, a hearing was held on the parties' pending motions. Richard testified first at the hearing. Tr. 6-74. He was 62 years old at the time of the hearing. Richard had worked for Van Leer and Greif Packaging for 27 years until 2018, when he lost his job. At the time of his divorce from Catherine, he was earning approximately $104,000 at Greif Packaging. He began working for a company called Mubea in October 2018. He made $32 per hour there as an electronics technician. Around that same time, Richard's health began declining.

{¶ 7} After working for Mubea for about one year, Richard began suffering from heart problems. Eventually, he began receiving short term disability equaling about 60% of his Mubea wages. He received short term disability benefits until June 2022. Richard then applied for Social Security disability benefits. He received a letter in January 2023 informing him that his application for Social Security benefits had been approved. As a result, Richard was sent a lump sum payment of over $25,000, which represented benefits from July 2022 to January 2023. After his attorney's share was deducted, Richard received $19,355.25. Richard did not use any of this $19,355.25 to pay any of the spousal support arrearage that had accrued. As of January 2023, Richard received monthly Social Security disability benefits in the amount of $3,087.80. Richard

presented no evidence at the hearing to dispute that he then owed $37,582 in spousal support arrearage.

{¶ 8} Richard was no longer able to work due to his heart condition, knee problems, and depression and did not expect any employment income in the future. According to Richard, his heart problems made a heart attack inevitable. He decided to file a motion to terminate his spousal support obligation after he had a mental breakdown and stopped receiving short term disability benefits.

{¶ 9} Richard's total monthly expenses were $2,974 at the time of the hearing, while his monthly income was the $3,087.80 in Social Security disability benefits. His monthly expenses included $864 for a 2015 Chevy Impala Richard previously had cashed out the money from his 401k retirement account and spent it on living expenses. He had not begun drawing on his pension from Greif Packaging and had not seriously considered doing so. Richard was uncertain whether he could start withdrawing from his pension at the time of the hearing but did not plan to do so until he was 70 years old.

{¶ 10} Richard testified he had approximately $3,000 in his 401k with Mubea, $500-$1,000 in savings, and $600 in checking. Richard filed for Chapter 7 bankruptcy in 2020 or 2021, which allowed him to discharge credit card debt. He did not have any medical bills discharged.

{¶ 11} Catherine also testified at the hearing. Tr. 75-105. She was 62 years old at the time. Catherine had been receiving Social Security disability income since 2013 or 2014. She needed two knee replacements and had asthma, anxiety, depression, bulging discs, and levoscoliosis. Her sole monthly income was from Social Security,

which totaled $1,398.60 after taxes. Her monthly expenses totaled $3,145. Catherine used a credit card to make up the difference between her income and expenses. Catherine also had approximately $80,000 left from her share of Richard's 401k. She used money from the 401k to pay off her credit cards. She had withdrawn $11,000 at that time from her share of the 401k to pay her bills. Catherine was eligible to receive monthly payments from Richard's pension, but she had chosen to wait until she was 65 to start drawing on his pension. That decision should result in a benefit of $40,000 to her. If she chose to take his pension benefits immediately rather than at age 65, she would receive about $400 monthly.

{¶ 12} Although Catherine did not contest that Richard was disabled, she testified that she needed the $1,750 monthly spousal support to make up the difference between her income and expenses. Catherine could not afford the knee replacements that she needed. She received only $939.85 total in spousal support in 2023. Richard's spousal support payments stopped in March 2023. She believed Richard could withdraw from his pension if he made the election to do so. Catherine did not know how much Richard's monthly pension payment would be if he elected to take benefits immediately.

{¶ 13} On October 18, 2023, the trial court issued its decision on the pending motions. The court found that both parties had diminished incomes, diminished earning capacities, and health issues. Despite this, the court found that the earlier order setting Richard's spousal support obligation at $1,750 per month was "appropriate at this time." The trial court then stated:

> However, [Richard] has done very little to help himself. On February

7, 2022 [Richard] filed a Motion to terminate or reduce his support obligation. He was receiving short term disability and did not pay anything towards spousal support arrearage or current spousal support.

[Richard] did return to work in January 2022 and a portion was withheld for spousal support but less than the $1,750.00 obligation. He then left employment and started receiving short term income and did not pay anything towards his spousal support obligation or arrearage.

In January of 2023 [Richard] received a gross sum of $25,000 in disability but failed to pay any portion of it towards his spousal support obligation or arrearage.

Decision (Oct. 18, 2023), p. 1-2.

{¶ 14} The trial court found Richard in contempt for "failing to pay his spousal support obligation and arrearage on an ongoing basis." Richard was ordered to serve 10 days in the county jail and pay a fine of $250 for his contempt. The court stated that the jail time and fine would be suspended if Richard did the following by May 1, 2024: (1) immediately apply for any and all pensions or benefits of any kind in order to pay his financial obligations of spousal support and arrearage; (2) gain some employment to pay his obligations; and (3) immediately pay at least $200 per month toward his spousal support and $200 toward his spousal support arrearage "until his pension kicks in and/or he obtains employment whereby he will pay the full amount." The trial court also "suggested that [Catherine] apply for her pension benefits under [Richard's] pension."

{¶ 15} Richard filed a timely notice of appeal from the trial court's judgment.

II.     The Trial Court Abused Its Discretion by Not Reviewing the Relevant Evidence to Determine the Appropriate Amount of Spousal Support

{¶ 16} Richard raises the following two assignments of error:

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT-APPELLANT'S MOTION TO REDUCE OR TERMINATE SPOUSAL SUPPORT RETROACTIVE TO JULY 25, 2022, AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW.

THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO REDUCE OR TERMINATE SPOUSAL SUPPORT RETROACTIVE TO JULY 25, 2022, WHEN IT FAILED TO CONSIDER ALL INCOME SOURCES OF THE PARTIES IN REVIEWING THE SPOUSAL SUPPORT OBLIGATIONS.

{¶ 17} As noted above, the trial court's October 18, 2023 judgment (1) found Richard in contempt for failing to pay his ongoing spousal support obligation and arrearage and (2) overruled Richard's motion to modify or terminate his spousal support obligation.   Richard does not raise any assignment of errors challenging the trial court's contempt finding.   Therefore, we will limit our analysis in this appeal to Richard's arguments that the trial court should have granted his motion to modify or terminate his monthly spousal support obligation.

{¶ 18} The domestic relations court has jurisdiction to modify the amount or terms

of spousal support if the divorce decree contains a provision specifically authorizing the court to modify the amount or terms of the spousal support and the court determines that the circumstances of either party have changed. R.C. 3105.18(E)(1). Further, R.C. 3105.18(F) provides, in part:

> (1) For purposes of divisions (D) and (E) of this section and subject to division (F)(2) of this section, a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances so long as both of the following apply:

> (a) The change in circumstances is substantial and makes the existing award no longer reasonable and appropriate.

> (b) The change in circumstances was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was foreseeable.

{¶ 19} "The burden of showing that a reduction of spousal support is warranted is on the party who seeks the reduction." *Reveal v. Reveal*, 154 Ohio App.3d 758, 2003-Ohio-5335, 798 N.E.2d 1132, ¶ 14 (2d Dist.), citing *Haninger v. Haninger*, 8 Ohio App.3d 286, 456 N.E.2d 1228 (10th Dist.1982). Ordinarily, "the order of the trial court allowing or disallowing a change in spousal support will not be disturbed in the absence of a showing of an abuse of discretion." (Citations omitted.) *Id.* " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA*

*Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

{¶ 20} Richard contends that because he "is unable to work and on Social Security Disability for himself, such that he can barely provide for his own living and medical expenses, spousal support in the amount of $1,750.00 is unreasonable and inappropriate." Appellant's Brief, p. 9. According to Richard, the trial court erred when it failed to consider all of the parties' income sources. In particular, Richard argues that the trial court failed to consider how much Catherine's income would change if she received the benefits that she is eligible to receive under Richard's pension. Richard believes it was error for the trial court to require Richard to take his pension benefits now but allow Catherine to wait to take her pension benefit. *Id.* at 14.

{¶ 21} Catherine responds that since Richard's spousal support obligation was reduced in February 2019, "no further substantial change of circumstances has occurred, other than [Richard's] voluntary resignation of his employment." Appellee's Brief, p. 13. Catherine notes that "Ohio courts have recognized that retirement alone is not necessarily a change as between the parties which might justify the termination or suspension of spousal support." *Id.*, citing *Reveal*. Catherine also argues that Richard did not present any evidence as to the amount of retirement benefits that Richard would be receiving from his pension. According to Catherine, "[w]ithout this evidence, the trial court could not determine whether the combined amount of his Social Security disability benefits plus his anticipated pension benefits would substantially reduce his income from that which it

was at the time of the last reduction in 2019." Appellee's Brief, p. 9. Catherine points out that Richard "also failed to present any testimony suggesting that his monthly expenses had increased since 2019." *Id.* Finally, Catherine contends that "[t]here is no legal requirement that [she] exhaust potentially available pension income as a prerequisite to continuing ability to receive previously established spousal support." *Id.* at 11, citing *Borton v. Borton*, 6th Dist. Fulton No. F-10-003, 2011-Ohio-143.

**{¶ 22}** Both parties presented exhibits at the September 6, 2023 hearing setting forth their monthly expenses and both parties testified as to their current incomes. Richard essentially broke even each month when comparing his expenses with his Social Security disability income, while Catherine had a monthly deficit of over $1,700 when comparing her expenses with her disability income. Notably, one of Richard's largest monthly expenses was $864 for a car payment. Defendant's Exhibit G. He testified that this car payment was for a used 2015 Chevy Impala that he purchased after he received his lump sum Social Security disability payment. He did not testify as to why he needed to purchase a car given his lack of employment other than that he could no longer borrow his Dad's car. And it was unclear when he would have that car paid off or why the monthly car payment was so high for that type of older vehicle. The purchase of this car, however, did continue a pattern that permeates the record. Richard has consistently chosen to spend his income on everything but his spousal support obligation. When comparing Catherine and Richard's financial situations, Catherine appears to have consistently made wise and conservative financial decisions while Richard has not. It is not surprising the trial court found Richard in contempt of court given his failure to use

any of his over $19,000 in lump sum Social Security disability benefits to make any payments on his spousal support arrearage or his currently monthly obligation. Richard even testified that, at the time of the hearing, he had money in his checking account, savings account, and a 401k retirement account that he had failed to use to make payments toward his monthly spousal support obligation or growing arrearage. Further, Richard made the decision to defer taking his pension benefits because he thought it was more appropriate to start drawing from that pension at age 70. Once again, he made this conscious decision in spite of a court order requiring him to make spousal support payments.

**{¶ 23}** Despite Richard's blatant disregard of the trial court's spousal support orders, which culminated in a finding of contempt of court, it appears undisputed that Richard is now disabled to the point that he is unable to earn any additional income through employment. This fact establishes that there had been a substantial change in circumstances since the most recent modification of spousal support. Indeed, at the time of the most recent modification of spousal support in August 2022, the parties and the trial court appeared to believe that Richard would regain employment at some point in the near future. But this did not happen. Because Richard showed a substantial change in circumstances, the trial court was required to closely review the parties' financial situations to determine what would be an appropriate amount for Richard to pay in monthly spousal support going forward. R.C. 3105.18(C)(1).

**{¶ 24}** It is not evident from the record that the trial court conducted such a review of the parties' financial situations. Although the trial court was not necessarily required

to make findings related to the factors listed in R.C. 3105.18(C)(1), it is always helpful and appreciated when it does so. Without any findings regarding these factors, we are left to review a record that reveals both parties appear to be facing monthly budgetary deficits. As we pointed out above, Richard's monthly car payment seems remarkably high for the type of car he purchased, which may signal that his monthly car payment will be ending relatively soon. Or there may be expenses within Richard's list that the trial court did not believe were credible expenses or ones that the trial court believed were inflated. But the trial court stated nowhere that it found Richard not credible or that his expenses were inflated or not credible. Therefore, we must conclude on the particular record before us that the trial court abused its discretion by not considering the relevant evidence in the record, including the factors set forth in R.C. 3105.18(C)(1).

{¶ 25} Richard argues on appeal that the trial court should have considered how much additional income Catherine would have if she chose to take her share of Richard's pension now rather than at age 65. Catherine in turn argues that the trial court should have considered how much additional income Richard would have if he had taken his share of his pension now rather than later. Richard also believes it is unfair that the trial court did not order Catherine to take her share of Richard's pension now while requiring Richard to take his pension now. We note that the trial court ordered Richard to take his pension now. The trial court ordered this as part of its contempt power. Richard did not challenge the contempt finding on appeal. Further, we cannot conclude that the trial court should have ordered Catherine to take out her portion of Richard's pension. There was no evidence in the record that Catherine chose to not withdrawal at this time in order

to artificially lower her income and increase Richard's spousal support obligation. Rather, she explained why withdrawing now would cause a significant blow to her income in just a few years. If anything, her decision to delay her pension benefits by a couple of years ultimately will result in a higher income for her, which will actually benefit Richard in terms of possibly lowering his spousal support obligation once she takes the benefits in a couple of years. And it is important to remember that Richard, not Catherine, is the party who was ordered to pay spousal support and chose not to do so. The fact that Catherine had been much better than Richard at conserving her assets over the years does not and should not affect Richard's court-ordered spousal support obligation. *See Borton*, 6th Dist. Fulton No. F-10-003, 2011-Ohio-143, at ¶ 14 (concluding that obligor's argument that an obligee's "assets somehow lessen or negate his legal monthly spousal support obligation towards [the obligee's] monthly living expenses is not supported by relevant or controlling law or precedent").

{¶ 26} Richard's assignments of error are sustained on the basis that the trial court failed to consider the factors in R.C. 3105.18(C)(1) after Richard established a substantial change in circumstances due to his involuntary termination of employment. On the record before us, we cannot determine the proper amount of spousal support that should be awarded to Catherine going forward. Moreover, that determination should be made, in the first instance, by the trial court after considering all the relevant evidence. On remand, the trial court may need to receive additional evidence from the parties in order to closely review their alleged living expenses and all sources of income, including what amount Richard will receive from his pension.

III.     Conclusion

**{¶ 27}** Having sustained Richard's assignments of error, we will reverse the judgment of the trial court as it relates to spousal support; we remand the cause for the trial court to consider all the relevant evidence and to determine the appropriate amount of spousal support that Richard should pay Catherine on an ongoing basis.    With respect to the contempt finding, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


EPLEY, P.J. and HUFFMAN, J., concur.