[Cite as *Clayburn v. Clayburn*, 2025-Ohio-766.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| AMANDA J. CLAYBURN | : | |
| Appellee | : | C.A. No. 30261 |
| | : | |
| v. | : | Trial Court Case No. 2014 DR 00383 |
| | : | |
| ERIC G. CLAYBURN | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 7, 2025

. . . . . . . . . . .

REBECCA BARTHELEMY-SMITH, Attorney for Appellant

RICHARD P. ARTHUR, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Eric G. Clayburn appeals from a post-divorce decree judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which ordered him to pay monthly spousal support to his former wife, Amanda J. Clayburn. For

the following reasons, the trial court's judgment will be affirmed.

## I. Procedural History

**{¶ 2}** The parties divorced in January 2017 after 32 years of marriage. Throughout their marriage, Eric was an officer in the United States Army, reaching the rank of colonel. He served at bases worldwide, and Amanda accompanied him. In March 2014, Amanda filed a complaint for divorce.

**{¶ 3}** A final divorce hearing was held before a magistrate. With respect to the issue of spousal support, the magistrate found:

> Neither party is employed. Plaintiff [Amanda] has not been employed for many years. Plaintiff is pursuing education to become a "life" coach. Defendant [Eric] is retired and is pursuing education for employment outside the military. Defendant is adjusting to life outside the military and states he suffers from PTSD. Defendant has financial assistance from his G.I. Bill.

> The parties will be splitting defendant's military pension. Defendant earned close to $200,000 before his military retirement of $83,000.00 annual income.

> The parties have considerable assets, some of which are not easily accessible for payment of living expenses.

> The parties have been married for over 30 years and have raised a family. The parties have travelled across this country and out of the country. Plaintiff is 56 years old and defendant is 55 years old. Both

appear to be in good health.

It is found that no award of spousal support is appropriate at this time in light of the parties' comparable incomes. Due to defendant having more earning capacity [than] plaintiff and based upon his past employment and experience, jurisdiction to award spousal support will be retained for ten years in the event defendant or plaintiff become employed.

Eric objected to the magistrate's decision, arguing in part that the court should not retain jurisdiction over spousal support. The trial court overruled his objection.

{¶ 4} The final judgment and decree of divorce addressed the issue of spousal support, stating: "[N]o spousal support shall be paid by either party. The Court shall retain continuing jurisdiction of spousal support rights for a period of ten (10) years. The parties shall exchange tax returns on or before April 15 of each year."

{¶ 5} Eric appealed the final judgment and decree of divorce. His fourth assignment of error challenged the trial court's decision to retain jurisdiction over spousal support for ten years. He argued that his military pension was sufficient to provide for both parties and that any future potential employment either party might obtain would not justify spousal support. *Clayburn v. Clayburn*, 2017-Ohio-7193, ¶ 21 (2d Dist.).

{¶ 6} On review, we found no abuse of discretion in the trial court's retention of jurisdiction over spousal support for ten years. Initially, we noted that a trial court "may retain jurisdiction over the issue of spousal support even when no support is ordered." *Id*. at ¶ 22, quoting *Pentella v. Pentella*, 2014-Ohio-1113, ¶ 48 (2d Dist.). And, the fact that the parties were splitting a significant military pension did not preclude the potential

need for a future spousal support award if one of the parties was employed and earned significantly more than the other. *Id.* We further pointed to the parties' roughly 30-year marriage and the fact that Eric's earnings had significantly exceeded those of Amanda, that both parties were pursuing educational opportunities, and that their relative future earnings were unknown. *Id.* at ¶ 23.

{¶ 7} Approximately five years later, Amanda moved for a modification of spousal support with a request that it be ordered retroactively due to Eric's failure to exchange tax returns as required by the decree. After a hearing on October 19, 2023, the magistrate granted the motion and ordered Eric to pay $1,200 per month indefinitely, effective June 23, 2022 (the date of the motion), plus an additional $240 per month on the spousal support arrearage.

{¶ 8} Eric objected to the magistrate's decision. Citing R.C. 3105.18(E), he first argued that the trial court lacked jurisdiction to modify spousal support. Second, he claimed that the magistrate did not consider all relevant factors of R.C. 3105.18(C), including Amanda's retirement accounts, her military retirement, and her financial need. Third, he asserted that the court had no authority to extend spousal support beyond ten years, if it could be ordered at all. Finally, Eric claimed that the spousal support should not have been made retroactive to June 23, 2022, as he was not promptly served with the motion.

{¶ 9} On August 27, 2024, the trial court overruled Eric's objections and imposed the same $1,200 per month of spousal support, effective June 23, 2022, to continue indefinitely. It also ordered Eric to pay, effective June 1, 2024, $240 per month toward

the spousal support arrearage.   The court reasoned:

The Parties were married for over 32 years, making this a long term marriage.   Plaintiff testified that she worked over the course of their marriage but that Defendant was the main bread winner.   During the marriage, Plaintiff was the primary caregiver to the Parties['] three children.

The Parties separated Defendant's military retirement in the Decree, and each party is receiving their equal share.   Defendant has continued to contribute to his retirement accounts since the divorce, while Plaintiff has had to take distributions from her portion of the retirement accounts in order to supplement the shortage in her monthly income.

Plaintiff has filed for disability and is not currently working due to loss of use of her thumbs.   She continues to await a decision on her disability application.   Plaintiff has not been able to afford a new house, vacations, or to contribute to her daughter's wedding.

Defendant is currently employed and is working fulltime at St. Augustine Youth Services.   He testified that he has a new home in Florida, which has a mortgage.   He confirmed that he has gone on several vacations, including a cruise and a trip to Disney.   He further contributed to their daughter's wedding.   He says his girlfriend has helped pay for the vacations.   He claims that he has paid for marital time shares since the Decree.   Defendant offered to pay Plaintiff a monthly spousal support amount of $326.78 to be paid indefinitely.

After considering all of the factors, it is clear that there is a change of circumstances subsequent the Decree, in that Plaintiff is now unable to work and has filed for disability. Further, Plaintiff is in need of the spousal support award and Defendant has the ability to pay same.

{¶ 10} Eric appeals from the trial court's judgment, raising three assignments of error.

## II. Jurisdiction to Order Spousal Support

{¶ 11} In his first assignment of error, Eric claims that the trial court erred in ordering spousal support when no spousal support was originally ordered in the divorce decree. He asserts that, pursuant to R.C. 3105.18(E), the trial court lacked jurisdiction to do so.

{¶ 12} The domestic relations court may award spousal support in the form of real property and/or personal property "or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable." R.C. 3105.18(B). Typically, a court cannot modify its final judgment.

{¶ 13} However, R.C. 3105.18(E) gives the domestic relations court the ability to retain continuing jurisdiction over spousal support under certain circumstances. *See Reinhold v. Reinhold*, 2021-Ohio-2786, ¶ 2 (2d Dist.). That statute provides, in relevant part:

*[I]f a continuing order for periodic payments of money as spousal support is entered in a divorce [action] . . ., the court that enters the decree of divorce*

. . . does not have jurisdiction to modify the amount or terms of the . . . spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:

(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.

(Emphasis added.) R.C. 3105.18(E)(1).

{¶ 14} Eric asserts that the plain language of R.C. 3105.18(E) does not permit a post-decree order of spousal support when spousal support was not ordered in the decree. He notes that the decree imposed spousal support of $0 per month. Eric acknowledges that this court has previously held that periodic payments can be ordered when no spousal support was entered in the decree. He notes, however, that other Ohio appellate districts, such as the Third District, have held otherwise.

{¶ 15} For more than 30 years, we have interpreted R.C. 3105.18(E) as permitting the modification of spousal support even when no spousal support was awarded in the divorce decree. In *Aylstock v. Bregenzer*, 1994 WL 371330, *2 (2d Dist. June 29, 1994), we stated that, "[a]lthough R.C. 3105.18(E) does not expressly provide for the modification of spousal support when no spousal support has been ordered initially in the divorce decree, it does not expressly prohibit a modification under those circumstances." We continued: "Where the trial court has reserved jurisdiction for a reasonable period of time to modify spousal support if its projection of earning ability should prove to be

erroneous in the light of the changed circumstances inherent in actual subsequent experience, . . . it is consistent with the purposes underlying the statute to permit a modification allowing spousal support when a satisfactory showing of changed circumstances has been made." *Id.* We stated then that a contrary holding "would require a trial court to award spousal support in a nominal amount to act as a predicate for its reservation of jurisdiction to increase the award in the event of changed circumstances. This would be a cumbersome procedure, since it would involve wage withholding and poundage in nominal amounts." *Id.* We have continued to adhere to our reasoning in *Aylstock* and decline to reconsider it.

{¶ 16} Even if we were inclined to do so, we conclude that the law of the case doctrine persuades us from doing so here. The law of the case doctrine functions to compel inferior courts to follow the mandates of reviewing courts. *State v. W.T.D.*, 2022-Ohio-632, ¶ 18 (2d Dist.), citing *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). It provides that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan* at 3. Therefore, "[a]bsent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Id.* at syllabus.

{¶ 17} Eric previously challenged the trial court's retention of jurisdiction over spousal support in his appeal from the final judgment and decree of divorce. We overruled that assignment of error, stating that the trial court had the authority to retain

jurisdiction even when spousal support had not been awarded in the decree. *Clayburn*, 2017-Ohio-7193, at ¶ 23. This conclusion is the law of the case, and we find no exceptional circumstances that justify our deviation from this holding.

{¶ 18} Eric's first assignment of error is overruled.

### III. Amount of Spousal Support

{¶ 19} Eric's second assignment of error claims that the trial court erred by failing to consider (1) all sources of income when ordering spousal support and (2) whether there was a change in circumstances that was not contemplated at the time of the decree.

{¶ 20} We generally review a judgment allowing or disallowing a change in spousal support for an abuse of discretion. *Clack v. Clack*, 2024-Ohio-1807, ¶ 19 (2d Dist.). "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, (1990).

{¶ 21} The domestic relations court has jurisdiction to "modify the amount or terms" of periodic spousal support if the divorce decree contains a provision specifically authorizing the court to modify the amount or terms of the spousal support and the court determines that the circumstances of either party have changed. R.C. 3105.18(E)(1); *Clack* at ¶ 18. A change in the circumstances includes, but is not limited to, "any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances," provided that

(a) The change in circumstances is substantial and makes the existing award no longer reasonable and appropriate, [and]

(b) The change in circumstances was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was foreseeable.

R.C. 3105.18(F)(1).

{¶ 22} In this case, the magistrate heard testimony that there had been changes in both Eric's employment and in Amanda's ability to work. During the parties' marriage, Eric was a career military officer, and Amanda had been employed almost everywhere the couple had resided, although Eric's employment paid more and Amanda was the primary caregiver for their children. When the decree was entered, Eric had retired from the military, and both Eric and Amanda were pursuing additional education. In overruling Eric's objections to the magistrate's decision regarding retention of jurisdiction, the trial court noted that the parties would, "as an immediate matter, have equivalent income due to the division of Eric's military pension." Decision and Judgment (Sept. 28, 2016). The court retained jurisdiction over spousal support because there was no evidence regarding earning potential once the parties graduated with their respective degrees. *Id.*

{¶ 23} At the hearing for the establishment of spousal support, Eric testified that, since the divorce, he had obtained a master's degree in social work. He was initially employed at SMA Healthcare and worked at the time of the hearing as a mental health therapist at St. Augustine Youth Services. Eric's salary with SMA was $41,238.97 in 2020 and $46,535.17 in 2021; his 2023 salary at St. Augustine was $52,500. Additionally, Eric was receiving Veterans Administration (VA) disability benefits of $20,232 per year. In contrast, Amanda lost the use of her thumbs and had been unable

to drive or work for the two years prior to the October 2023 hearing. Before that, Amanda worked seasonally for Target and Kohl's. In our view, the trial court did not abuse its discretion in finding a change of circumstances significant enough to justify consideration of a spousal support award.

{¶ 24} R.C. 3105.18(C)(1) sets forth 14 factors for the court to consider when determining the nature, amount, and terms of payment, and duration of spousal support. These factors include:

(a) The income of the parties, from all sources . . . ;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party . . . ;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

{¶ 25} According to the evidence at the hearing, Eric now resides in Florida, where he has purchased a house with a mortgage. Since the divorce, he has taken his family to Disney World for vacation and used approximately $16,000 from an IRA account for his daughter's wedding. In addition to his salary, Eric's income consists of half of his military retirement (approximately $49,000) and VA disability payments of $1,686 per month ($20,232 annually). Eric has contributed approximately $1,400 per year to a retirement account through his employment, for a total value of approximately $6,000. His other retirement account has approximately $126,000.

{¶ 26} Outside of general living expenses, Eric's expenses include a student loan of $24,000, for which he pays $300 per month. He has two other loans with monthly payments of $1,500 and $800, respectively. Eric also has a monthly mortgage payment of $2,248, a $900 per month car payment, and a $187 monthly payment related to placing

solar panels on his house. Eric further testified that he has been paying approximately $4,483.86 per year for Amanda's timeshares. He also indicated that he has paid toward the Survivor Benefit Plan that the decree requires Amanda to pay. At the hearing, Eric offered to pay spousal support of $326.78 until his death.

{¶ 27} Amanda's main source of income was her half of Eric's military retirement, which amounted to $52,250.29 in 2022. In 2021, she also had $33 in interest income. Amanda had filed for Social Security disability income but had not yet received a response. She testified that she faced a monthly shortfall of $1,500, which she paid for with withdrawals from her retirement account. There was no testimony detailing her expenses or her current assets. She testified that she was unable to buy or build a home, go on vacation, add to her retirement accounts, or contribute to her daughter's wedding.

{¶ 28} When asked about the parties' standard of living during the marriage, Eric testified they sometimes lived in military housing and sometimes not; they did purchase a home at one point. He said there were times that they were able to go on vacations and eat out, and times that they could not; sometimes they struggled financially. The couple accumulated retirement accounts and investment accounts that were divided in the divorce decree. Amanda always had a vehicle to use.

{¶ 29} Eric asserts on appeal that the trial court did not consider all relevant factors, including Amanda's IRA balances, the amount she received from his retirement benefits, Amanda's financial need, and her liabilities. Eric also points to the information in Amanda's June 23, 2023 affidavit of financial disclosure regarding her monthly income and expenses.

{¶ 30} We find no indication that the trial court failed to consider all relevant factors. The trial court was aware of the terms of the divorce decree, which detailed the division of the parties' property, including retirement assets, and both parties testified that they were receiving military retirement as income. Limited testimony was provided at the hearing regarding Amanda's monthly expenses, and neither party mentioned, much less relied upon, Amanda's financial disclosure form. While the trial court addressed some factors in a more general manner and did not specifically address every aspect of the parties' testimony, such as all of Eric's monthly liabilities, the record does not support a conclusion that the trial court failed to comply with R.C. 3105.18(C).

{¶ 31} Finally, with the record before us, we cannot conclude that the trial court's award of $1,200 per month of spousal support to Amanda, effective June 23, 2022, was an abuse of discretion. Amanda's testimony established that the military retirement income did not cover all her expenses and that she was using disbursements from her retirement accounts to meet her needs. She testified that her expenses exceeded her income by $1,500 per month. Amanda's 2021 tax return showed that she had $14,212 (an average of $1,184.33 per month) in income from retirement accounts. The trial court's award of $1,200 per month was consistent with allowing Amanda to meet her expenses. On appeal, Eric takes issue with the amount of some of her expenses, but Amanda testified that she was unable to purchase a home, take vacations, or dine out with her current income. The trial court reasonably concluded that Amanda needed support of $1,200 per month.

{¶ 32} Moreover, the trial court reasonably concluded that Eric was able to pay

$1,200 in spousal support. Between Eric's salary, military retirement, and VA disability payments, Eric's gross annual income totaled approximately $122,000. Outside of general living expenses, Eric detailed several loan obligations – car, mortgage, student loans, solar panels, and two other loans – with annual payments totaling approximately $71,000. He also indicated that he was paying the Survivor Benefit Plan and timeshare costs that Amanda was required to pay under the decree, at a cost of thousands of dollars per year. Although it appears that the $1,200 per month support obligation may leave Eric with limited discretionary income, the trial court nevertheless could have reasonably concluded that Eric could afford to pay $1,200 per month and that a spousal support order of $1,200 was reasonable and appropriate.

{¶ 33} Eric's second assignment of error is overruled.

### IV. Length of Spousal Support

{¶ 34} In his third assignment of error, Eric claims that the trial court erred by not specifying the length of the spousal support. He asserts that, since the trial court only reserved jurisdiction for ten years, spousal support should have been limited to ten years from the date of the decree. Eric further emphasized that he and Amanda were in their mid-60s and that he could not be expected to work for the rest of his life or even much longer.

{¶ 35} Eric's assignment of error suggests that the trial court did not specify the duration of spousal support. However, it stated that Eric was to pay "$1,200.00 a month in spousal support, to continue indefinitely." Judgment, p. 9. Absent further modification, that amount would continue until Eric's death. *See* R.C. 3105.18(B).

{¶ 36} At the hearing, Eric asked the magistrate about the duration of spousal support if the court were to award more than the amount he had offered to pay. Eric specifically asked if that amount would only be while he was working and had additional income. The magistrate responded, "Spousal support is modifiable upon any substantial change of circumstances. Those can be voluntary, such as retirement[,] or involuntary such as being fired. All right. Any increase and decrease in income is a reason to file a motion. . . . So what we do is we'll take how things are today and if things change, and as they change, either party can file a modification." It is unclear whether the magistrate understood that any future motion to modify spousal support would need to be filed within ten years of the divorce decree. In contrast, the trial court's judgment expressly stated that the court "retains jurisdiction over spousal support for the 10 years specified in the Decree."

{¶ 37} Given the terms of the divorce decree and the testimony at the October 19, 2023 hearing, we cannot conclude that the trial court's order of indefinite spousal support was unreasonable. At the time of the divorce, the trial court concluded that the parties' financial situations were equivalent such that spousal support was not appropriate. However, when the October 19 hearing occurred, Amanda, then age 64, was not employed. Eric, then age 62, was employed and was receiving a salary and VA disability payments. As a result, Eric's income exceeded Amanda's by approximately $73,000.

{¶ 38} The record contains little concrete information about when this income disparity will cease, if ever. Amanda testified that she had applied for Social Security disability, but the outcome was then unknown. She was within a few years of being

eligible to receive unreduced Social Security retirement benefits, but there was no testimony about the amount of those benefits. While the trial court could reasonably assume that the discrepancy in the parties' income would decrease significantly once Eric stopped working, there was no evidence about when that might occur. Accordingly, the trial court reasonably concluded that, based on the information before it, an indefinite support order was appropriate.

**{¶ 39}** We recognize that the trial court's retention of jurisdiction will cease in January 2027 and that there is a significant chance that the parties' circumstances may change such that it would be reasonable to reduce, if not eliminate, the spousal support order. Nothing in this Opinion precludes Eric or Amanda from filing another motion to modify spousal support prior to the termination of the court's jurisdiction over spousal support. In ruling on any such motion, the trial court may modify the amount and/or duration of spousal support, as appropriate.

**{¶ 40}** Eric's third assignment of error is overruled.

### V. Conclusion

**{¶ 41}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .


TUCKER, J. and HUFFMAN, J., concur.